### George Scott, Jr., v. The State.

*No. 3558.  Decided November 26.*

1. **Practice—Jury Law.**—Pending the trial the defense moved to quash the special venire from which the trial jury was subsequently selected. The motion, so far as appears from the record, was based upon mere irregularities. In the certificate to the bill of exception reserved to the order overruling the motion the trial judge explains that "the jury was gotten from the list (copy) with which defendant was served, and each juror was accepted by defendant; that is, no juror was forced upon him by reason of the fact that he had exhausted his challenges." *Held*, that no error is made manifest by the record.

2. **Murder—Fact Case.**—See the statement of the case for the substance of evidence *held* sufficient to support a capital conviction for murder.

APPEAL from the District Court of Rusk. Tried below before Hon. A. J. Booty.

The appellant was convicted in the first degree for the murder of Zilla Scott, his sister, and was awarded the death penalty.

Brief as is the statement of facts in this case, it recites the details of a crime rarely if ever equalled, and certainly not surpassed, in atrocity by any recorded in the annals of criminal trials in this State.

Emma Scott, the sister of the defendant and the deceased, testified that at the time of her death the deceased was pregnant, and that, according to current report and belief, the defendant was the father of the unborn child. On the morning of Sunday, August 3, 1890, the family (including the defendant) except the deceased, left home to attend church. The deceased declined to go because of her condition. At a point about three-quarters of a mile from home the defendant separated from the party, ostensibly to attend another church. The witness and others of the family returned home after 11 o'clock on that night, but saw nothing of deceased. On the next morning her dead body was drawn from the well. George Scott, Sr., the father of deceased, had treated deceased harshly. He had whipped and beaten deceased, and once drove her from home because she had disgraced the family.

Medical testimony established the fact that the death of Zilla Scott was caused by gun shot wounds and blows upon the head.

Deputy Sheriff Woodall testified, in substance, that after his arrest the defendant, being legally warned by him that whatever statement he made about the killing would be used against him, stated to him in effect that he, defendant, killed the deceased; that he had carnal knowledge of her once through mistake; that he found the deceased sitting on the box of the well; that he then shot her with a gun, but failing to kill her, he procured an old axe, with which he struck her several blows on the head and killed her; that he then threw her body into the well; that he afterwards threw the old axe into the well. Witness afterwards found an old axe in the well, and in the house of the defendant's father he found an old double barreled shot gun. One barrel had been recently discharged. The other was charged with shot similar in size and appearance to shot taken from the body of deceased. The axe was discovered by means of the information given by the defendant.

The defendant took the stand, and, as to the circumstances immediately attending the killing, corroborated in detail the statement he had made to the witness Woodall. He testified further that his one act of copulation with his sister, the deceased, was performed through mistake. It took place at night, in the dark, and in a bed occupied by the deceased and another girl. The witness (defendant) was drunk at the time, and then thought he was copulating with the other girl. When the pregnancy of deceased became apparent and his agency in bringing about her condi-

tion known, George Scott, Sr., the father of the witness and the deceased, declared to the witness that the family had been disgraced, and that if witness did not kill deceased he would kill the witness. The plot to kill the deceased was concocted by the witness and his said father on the day before the killing.

. *H. Wood* and *A. D. Sparkman,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—This appeal is from a judgment assessing the death penalty.

At the trial a preliminary motion was made to quash the special venire, for certain supposed defects and discrepancies in and between said venire and the copy of the same as served upon the defendant. Though the original venire and the officer's return upon the same have, by special order of the court, been sent up with the transcript of the record, it has afforded us but little if any light at all upon the subject matter complained of. In so far as we are permitted under the agreement of the Assistant Attorney-General to consider these original papers—the same not being otherwise entitled to consideration because not properly identified and authenticated—we have been unable to see on the face of said papers any error of more serious character than mere irregularities. The matter complained of is in a very confused and unsatisfactory condition. The bill of exceptions in which it is attempted to be presented contains an addenda or explanation given by the learned trial judge, which states that "the jury was gotten from the list (copy) with which defendant was served, and each juror was accepted by defendant; that is, no juror was forced upon him by reason of the fact that he had exhausted his challenges." We have been unable to see or find any material, reversible error in this matter, even if it be conceded that the defendant had any reasonable ground of complaint in the premises.

When defendant was arraigned upon the indictment and asked whether he was guilty or not guilty as therein charged, he answered in person that he was guilty. When the trial was ready to be proceeded with, and he was again called upon to plead before the jury, he pleaded again "guilty." In both instances he was fully advised and admonished by the court as to the consequences of such a plea, notwithstanding which he persisted in his plea of "guilty;" and since it plainly appeared to the court, as is recited in the judgment, "that defendant is sane, and he is uninfluenced in making said plea by any consideration of fear, or by any persuasion or delusive hope of pardon prompting him to confess his guilt, the said plea of guilty is by the court received, and now entered of record upon the

minutes of the court as the plea herein of the said defendant." Upon this plea the trial was had.

Over and above the defendant's plea of guilty, the evidence, as we find it in the record, establishes his guilt beyond all question; and in addition to the testimony of the other witnesses, the defendant took the stand as a witness himself and testified to the horrible and sickening details of the murder of his victim—his own sister; a murder perpetrated by him to hide the shameful results of an incestuous intercourse between them, which had brought disgrace upon his family.

We have found no reversible error in the record of his conviction, and nothing which should mitigate the extreme penalty of the law in his case, wherefore the judgment is in all things affirmed.

*Affirmed.*

Hurt, J., absent.